**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:25-cr-280-SI |
| Plaintiff-Appellee, | **OPINION AND ORDER** |
| v. | |
| **DAVID PEARL**, | |
| Defendant-Appellant. | |

Scott E. Bradford, United States Attorney; and Leah K. Bolstad and Ethan G. Bodell, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for Plaintiff-Appellee.

Thomas Freedman, PEARL LAW LLC, 838 SW First Avenue, Suite 400, Portland, OR 97204. Of Attorneys for Defendant-Appellant.

**Michael H. Simon, District Judge.**

Federal law enforcement officers twice arrested David Pearl, charging him with Class C misdemeanors, for conduct occurring during his protesting activities outside the U.S. Immigration and Customs Enforcement ("ICE") facility in Portland, Oregon. After a bench trial, United States Magistrate Judge Jolie A. Russo convicted Pearl of one count of failing to obey a lawful order in violation of 41 C.F.R. § 102-74.385 and one count of creating a disturbance in violation of 41 C.F.R. § 102-74.390(c). Judge Russo imposed a sentence of one year's probation.

PAGE 1 – OPINION AND ORDER

Pearl timely appealed these convictions. This District Court has jurisdiction under 18 U.S.C. § 3402. *United States v. Aldana*, 878 F.3d 877, 880 (9th Cir. 2017). For the reasons stated below, this Court affirms Mr. Pearl's two convictions.

## STANDARDS

When a conviction is appealed from a United States Magistrate Judge to a United States District Judge, the scope of the appeal is the same as in an appeal to United States Court of Appeals from a judgment entered by a district judge. Fed. R. Crim Proc. 58(g)(2)(D); *see also United States v. Stanton*, 501 F.3d 1093, 1099 (9th Cir. 2007). Thus, the Court reviews the Magistrate Judge's legal conclusions de novo and findings of fact for clear error. *United States v. Powers*, 129 F.4th 617, 623 (9th Cir. 2025). "Under the clear error standard, factual findings must be upheld so long as they are 'plausible in light of the record viewed in its entirety.'" *Id.* (quoting *June Med. Servs. v. Russo*, 591 U.S. 299, 301 (2020)).

## BACKGROUND

In the summer of 2025, protesters often gathered at the ICE facility located at 4310 South Macadam Avenue ("ICE Facility"). ER 29. Although the ICE Facility is privately owned, it is leased to the General Services Administration ("GSA"). Several agencies with the U.S. Department of Homeland Security, including ICE, occupy that building. ER 23, 28, 41, 60. The sole access point for vehicles is a driveway on the northeast side. ER 28. During the summer 2025 protests, there was no sign or gate prohibiting entry onto the driveway. ER 53, 79. On occasion, some protesters, including Pearl, would enter or block this driveway. ER 30. Federal law enforcement officers arrested Pearl twice while he was engaging in that conduct.

### A.  Arrest on June 21, 2025

During the late afternoon and early evening of June 21, 2025, protesters gathered on the northeast side of the ICE Facility. Between 5:00 p.m. and 7:00 p.m., federal agents repeatedly

PAGE 2 – OPINION AND ORDER

played a prerecorded announcement using a long-range acoustic device ("LRAD") to warn protesters to clear the driveway. *See* ER 31-32. The announcement stated:

> This is the Federal Protective Service. The facility is closed and not open to the public. Stay out of the area of the driveway to allow for vehicular traffic. Remain on the sidewalk or across the street. Anyone, . . . includ[ing] the press, trespassing on federal property is subject to arrest.

Ex. 6 (audio); Ex. 7 (transcript). The LRAD announcement also played "regularly as vehicles came and went in the driveway," including "later on in the evening." ER 32.

At about 10:38 p.m., Pearl stood in the driveway of the ICE Facility alongside ten to twenty other protesters. *See* ECF 53, Ex. 8; ER 37-38. A security video shows Pearl standing in the driveway for 17 seconds before federal agents came out "to effect arrests . . . [f]or failure to comply with a lawful directive." ER 39. According to a government witness at trial, the federal agents "were giving hand and arm signals, as well as verbal instructions to leave the driveway" as they "pushed out" of the ICE Facility. ER 71. One of these federal agents arrested Pearl, according to another government witness, "following five announcements over the LRAD to clear the driveway." ER 40. The security video, however, did not record any sound, and no officer personally told Pearl to leave the driveway. ECF 53, Ex. 8; ER 46, 67.

After his arrest, Pearl was taken inside the ICE Facility. ER 44. He received a written citation alleging a violation of 41 C.F.R. § 102-74.385, which states:

> *What is the policy concerning conformity with official signs and directions?*
>
> Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature *and* with the *lawful direction of Federal police officers* and other authorized individuals.

41 C.F.R. § 102-74.385 (emphasis added).

PAGE 3 – OPINION AND ORDER

**B.  Arrest on June 29, 2025**

Eight days later, Pearl returned to the ICE Facility during another protest. ER 91, 188-89. This time, he remained on the public sidewalk with about ten other protesters. *See* Ex. 12. Two other protesters stood in the driveway. *Id.* At about 10:42 p.m., surveillance cameras recorded Pearl standing alongside other protesters on the public sidewalk and federal officers leaving the ICE Facility on foot to arrest the two protesters in the driveway. ER 94, 121-22. Just before the officers reached the protesters, however, Pearl entered the driveway. Ex. 11. Pearl grabbed one of the protesters from behind with both hands and pulled her backwards towards the sidewalk, causing them both to fall to the ground. ER 188-89. Officers then arrested Pearl for creating a disturbance on federal property in violation of 41 C.F.R. § 102-74.390. ER 97. That regulation reads:

> *What is the policy concerning disturbances?*
>
> All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct, or exhibiting other conduct on property that—
>
> * * * (c) Otherwise impedes or disrupts the performance of official duties by Government employees[.]

41 C.F.R. § 102-74.390.

**C.  Trial**

After conducting a bench trial, Judge Russo found Pearl guilty of violating both 41 C.F.R. §§ 102-74.385 and 102-74.390(c). Pearl timely appealed, arguing that the government failed to present sufficient evidence to sustain either conviction and that the trial judge improperly denied Pearl's request for a jury trial.

PAGE 4 – OPINION AND ORDER

## DISCUSSION

### A. Sufficiency of Evidence

In a criminal case, challenges to the sufficiency of evidence are reviewed de novo, as are questions of statutory interpretation. *Aldana*, 878 F.3d at 880. "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Roach*, 792 F.3d 1142, 1144 (9th Cir. 2015); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

#### 1. Actual Notice

Pearl first argues that the government failed to prove that Pearl had "actual notice" that his conduct was prohibited under both 41 C.F.R. §§ 102-74.385 and 102-74.390(c). Although actual notice of the illegality of one's conduct is typically not required to support a prosecution, *see, e.g.*, *Elonis v. United States*, 575 U.S. 723, 734-35 (2015), here failure of actual notice would require acquittal because of the specific charges brought against Pearl. All regulations proscribing behavior on federal property "shall be posted and remain posted in a conspicuous place." 40 U.S.C. § 1315(c)(1). Federal agencies must place these postings "at each public entrance to each Federal facility." 41 C.F.R. § 102-74.365.

As the government concedes, however, sometimes a defendant never enters a physical building—and thus never sees such a posting—because he is arrested for conduct that occurs outside a building. That is the case here because Pearl was arrested in the driveway of the ICE Facility. When posting is ineffective, actual notice satisfies the government's obligation under § 1315. *United States v. Bichsel*, 395 F.3d 1053, 1056-57 (9th Cir. 2005). Actual notice is achieved when a federal officer tells a defendant "the exact conduct that [is] prohibited and the consequences for disobeying." *See id.* at 1057. This is known as the "*Bichsel* exception."

PAGE 5 – OPINION AND ORDER

Viewing the evidence in the light most favorable to the government, a rational trier of fact could find that the *Bichsel* actual notice exception was satisfied for each of Pearl's two convictions. First, regarding the June 21 arrest for failure to obey lawful order, Inspector Cranmore testified that the LRAD message played five times and that officers gave verbal warnings and physical signals while they "pushed out" of the ICE Facility just before arresting Pearl. ER 69-71. A rational trier of fact would be justified in finding this testimony credible because Special Agent Coring, who also was present that night, corroborated Inspector Cranmore's testimony. ER 51. Inspector Cranmore also testified that the volume of the LRAD speaker ranges from 110 to 160 decibels. ER 31. Further, after the LRAD announcements, some protesters left the driveway. ER 69. A rational trier of fact would be justified in concluding from this evidence that the protestors in the driveway heard the LRAD announcements. The content of the LRAD message, moreover, states the exact conduct that is prohibited (trespassing on federal property by standing in the driveway) and the consequences for disobeying (namely, arrest). *See Bichsel*, 395 F.3d at 1057. Inspector Cranmore added that he was watching the group in the driveway carefully and that group "looked to be fairly consistent." ER 70. The government also offered, and the trial court received, video footage showing Pearl and other protesters standing in the driveway (with Pearl in the front of the group) after the time that Inspector Cranmore testified the LRAD warnings had been played. *See* ECF 53, 55 (Ex. 8). From this evidence, a rational trier of fact could conclude that Pearl himself was in the driveway when the LRAD announcements were made or, at the very least, that he saw the verbal and hand signals from the federal agents during the "push out." Accordingly, a rational trier of fact could conclude beyond a reasonable doubt that the government has satisfied the "actual notice" exception under *Bichsel*.

PAGE 6 – OPINION AND ORDER

Pearl also argues that the government failed to prove actual notice beyond a reasonable doubt because its evidence was purely circumstantial.[1] But "actual notice consistently has been interpreted as allowing proof by either direct or circumstantial evidence." *United States v. Mowat*, 582 F.2d 1194, 1201-02 (9th Cir 1978) (affirming convictions; rejecting argument that actual notice must be proven by direct evidence). Further, Pearl contends that, unlike the defendant in *Bichsel*, he did not admit hearing or receiving any warnings, which—he contends—is fatal to the government's ability to prove actual notice. But *Bichsel* did not disturb *Mowat*'s well-settled rule that actual notice may be proven by circumstantial evidence.[2] If proof of actual notice *required* such an admission, a criminal defendant could invoke the right against self-incrimination and thereby defeat prosecution, *see* U.S. CONST. amend. V. In addition, Pearl argues that the government's evidence is insufficient because the government did not offer evidence that any federal agent personally warned Pearl, but Pearl offers no legal support for the proposition that, to be effective, such a warning must be individually delivered.

In addition, Pearl challenges the sufficiency of the government's evidence of actual notice, arguing that the surveillance footage is only 17 seconds in duration, does not show him

---

[1] Pearl also argues that the government's evidence only amounts to constructive notice. This argument, however, conflates constructive notice—"knowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person," *Castro v. County of Los Angeles*, 797 F.3d 654, 675 (9th Cir. 2015) (cleaned up) (quoting *Constructive Knowledge*, BLACK'S LAW DICTIONARY (10th ed. 2014))—with actual notice proven by circumstantial evidence.

[2] *Bischel* based its adoption of the actual notice exception on *United States v. Davis*, 339 F.3d 1223 (10th Cir. 2003), which relied on *United States v. Ventura-Melendez*, 321 F.3d 230 (1st Cir. 2003). In *Ventura-Melendez*, the defendants denied receipt of actual notice but "ample circumstantial evidence showed that the defendants were aware that the Coast Guard was trying to stop them from entering a security zone." *Id.* at 234. Citing the Ninth Circuit's analysis in *Mowat*, the First Circuit affirmed the convictions, concluding that "the court's finding of actual notice was amply supported." *Id.*

entering the vicinity, and does not contain any audio. A rational trier of fact, however, could find that Pearl had actual notice without considering the surveillance footage at all. A trier of fact may credit the consistent testimonies of Inspector Cranmore and Special Agent Coring. Based on the evidence that several protesters left after the LRAD and verbal or physical warnings, a rational trier of fact could infer that Pearl, who stood at the front of the "fairly consistent" protest crowd in the driveway, heard or saw these warnings. A rational trier of fact, therefore, could conclude that Pearl had actual notice of the illegality of his conduct on June 21.

There also is sufficient evidence of actual notice for the June 29 arrest to support Pearl's conviction. The regulation that was violated expressly prohibits "imped[ing] or disrupt[ing] the performance of official duties by Government employees." 41 C.F.R. § 102-74.390(c). A rational trier of fact could determine that Pearl had actual notice that his conduct—grabbing onto the target of an arrest in the ICE Facility driveway and pulling her backwards, causing both the arrestee and the officer to fall to the ground—would disrupt the performance of official duties. Further, Pearl was arrested for failing to comply with a lawful directive one week earlier, so a reasonable trier of fact could conclude that he had actual notice that a protester standing in the driveway and ignoring LRAD announcements was breaking the law. Additionally, the *Bichsel* court condoned an "appeal to common sense" when it relates to actual notice. 395 F.3d at 1057. Thus, a reasonable trier of fact could conclude that Pearl had actual notice that his conduct on June 29th in grabbing the protester was unlawful, because interfering with a lawful arrest is a criminal offense under Oregon law. *See* Oregon Revised Statutes ("ORS") § 162.247(1). Just as "Father Bichsel could not have reasonably believed it was lawful to chain himself to the courthouse doors," *Bichsel*, 395 F.3d at 1057, Pearl could not have reasonably believed it was

PAGE 8 – OPINION AND ORDER

lawful to interfere with an arrest. A rational trier of fact, therefore, could find beyond a reasonable doubt that Pearl had actual notice sufficient to support the second conviction.

### 2.  Willful Entrance onto Federal Property

Pearl also argues that the government failed to prove beyond a reasonable doubt that he willfully entered onto federal property. Pearl notes that the government did not introduce a copy of the lease for the ICE Facility and that there were no fences, gates, or signs demarking the boundaries of the property, when he was arrested in June 2025.

Special Agent Coring testified that Lindquist Development Group, as lessor, leases the ICE Facility to GSA, as lessee, which then subleases the property to ICE and other Department of Homeland Security subagencies. ER 23. Similarly, Inspector Cranmore testified that his primary duty as an FPS Inspector is to provide law enforcement support to "GSA owned or leased properties" which, as relevant here, includes the ICE Facility. ER 59-60. In addition to this testimony regarding ownership, the government submitted evidence of the ICE Facility's property lines. *See* SER 3-4 (Exs. 4, 5). As depicted in the Multnomah County survey records (SER 3), the outermost edge of the flower box in the driveway (shown at 00:25 in Ex. 8) is within the property line. The retaining wall on the other side of the driveway (shown at 00:01 in Ex. 11) is flush with the flower box, making it also within the property line. Further, grating on the ground connects the outermost edges of the retaining wall and the flower box. *See, e.g.*, ER 190-91 (Exs. 512, 513). Viewing the evidence in the light most favorable to the government, a reasonable trier of fact could conclude that the driveway area behind the grating (that is, the area closest to the ICE facility) is property governed by the ICE Facility lease.

From this evidence, a reasonable trier of fact could conclude beyond a reasonable doubt that Pearl willfully entered federal property sufficient to support both counts. Each regulation at issue was promulgated under Title 41, Chapter 102, Subpart C (Conduct on Federal Property) of

PAGE 9 – OPINION AND ORDER

the Code of Federal Regulations. In a regulation titled *Applicability*, the Code states: "The rules in this subpart apply to all property under the authority of the General Services Administration (GSA) and to all persons entering in or on such property." 41 C.F.R. § 102-74.365.[3]

Although the second regulation that Pearl was convicted of violating regulates "[a]ll persons entering in or on Federal property," the first regulation regulates applies to "[p]ersons in and on property." *Compare* 41 C.F.R. § 102-74.390 *with* 41 C.F.R. § 102-74.385. Thus, the relevant question for the first count is whether there was sufficient evidence that Pearl willfully entered in or on "property" "under the authority of GSA." By its plain meaning, "authority" means having "power over other persons"[4] or "a power to require and receive submission: the right to expect obedience: superiority derived from a status that carries with it the right to command and give final decisions."[5] Viewed in the light most favorable to the government, this evidence is sufficient to prove that the ICE Facility was "under the authority" of GSA. As the leaseholder of the ICE Facility, GSA retains power over the building under property law. *See, e.g.*, *Pacificorp Power Mktg., Inc. v. Dep't of Revenue*, 340 Or. 204, 216 (2006) ("[L]essees of property generally exercise some degree of control over the leased property."); *Hatfield v. Gracen*, 279 Or. 303, 307 (1977) (citing Rest. (Second) of Torts § 77 for the proposition that, under common law, "one is privileged to use reasonable physical force in defending . . . property").

---

[3] The *Definitions* section of GSA's real property policies does not further define "authority" or "property." *See* 41 C.F.R. § 102-71.10.

[4] *Authority*, BLACK'S LAW DICTIONARY (9th ed. 2009).

[5] *Authority*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE (3d ed. unabridged 1961).

The ownership and property line evidence also is sufficient to prove that the ICE Facility is "Federal property" for the purposes of the second count. Both parties cite *Moore v. United States*, 254 Fed. App'x 603 (9th Cir. 2007) (unpublished), for the Ninth Circuit's purported definition of "federal property." *Moore*, however, is an unpublished opinion that relies on a Department of Education regulation pertaining to vending machines. *See id.* at 604 (citing 34 C.F.R. § 395.1(g)). Here, the Court gives other agencies' definitions of the phrase appropriate weight in determining the ordinary meaning of "federal property." The Department of Education defines federal property as "any building, land, or other real property owned, leased, or occupied by any department, agency, or instrumentality of the United States." 34 C.F.R. § 395.1(g). The Department of Homeland Security's definition of "federal property" also includes property "occupied" by the federal government. *See* 6 C.F.R. § 139.15 ("any facility, grounds, or other property, to include vehicles, equipment, and any movable article, that is owned, occupied, or secured by the Federal Government"). Property "occupied" by someone is colloquially considered to be their own, particularly where, as here, the occupier is a lessee. A reasonable trier of fact could conclude that the federal government "occupied" the ICE Facility from the testimony described above and, accordingly, that the ICE Facility was "Federal property."

Pearl further argues that, even if there is sufficient evidence to show that the driveway of the ICE Facility is property to which the federal regulations apply, there is insufficient evidence that he entered in or on such property *willfully*.[6] In this context, a *mens rea* requirement of

---

[6] In his reply, Pearl identifies a Ninth Circuit decision reviewing a regulatory offense under Chapter 41 that listed as separate elements the *mens rea* of the defendant and the requirement that he entered federal property. *See United States v. Brice*, 926 F.2d 925, 929 (9th Cir. 1991) (listing as separate elements for a violation of a regulatory offense under Chapter 41 "that the conduct occurred on government property," notice of the regulation, and "that Brice acted knowingly and willfully").

"willfulness" ensures that the criminal defendant acted voluntarily. Here, there is sufficient evidence for a reasonable trier of fact to find beyond a reasonable doubt that Pearl voluntarily crossed the threshold of the driveway onto government property (set off by the grate on the ground). With respect to the second count, Exhibit 11 shows Pearl crossing from the sidewalk with both feet firmly over the line, past the threshold of the flower box and the retaining wall. *See* Ex. 11 at 00:03.[7] Immediately before, security video shows Pearl and several other demonstrators standing in a line on the sidewalk behind the grate. *See generally id.* A reasonable trier of fact could infer from the protesters' placement, in addition to Pearl's arrest one week before for being in the driveway, that Pearl was aware that the driveway was federal property and that he voluntarily and willfully crossed the threshold onto federal property.

### 3. Lawful Directive

Pearl next asserts that the government failed to prove beyond a reasonable doubt that he was issued a lawful directive, which, if he were correct, would require reversal of count one. Chiefly, Pearl argues that the LRAD announcement does not comport with the basic principles of due process described in *United States v. Huziar*, 762 F. App'x 391, 392 (9th Cir. 2019) (unpublished). In this unpublished decision, the *Huziar* court surveyed cases where a conviction for a violation of 41 C.F.R. § 102-74.385 was upheld. *Id.* "In each case, officers gave defendants an unambiguous command (often multiple times); officers ensured that the command was understood; officers communicated that defendants would be arrested for failing to comply with the order; and defendants were given a reasonable opportunity to comply." *Id.* The panel then

---

[7] Pearl also argues that the government's later-painting of a blue line across the driveway undermines the evidence that Pearl acted willfully. Because the Court does not read the "willfully" *mens rea* requirement into the element of being on government property, but rather follows the approach in *Brice*, Pearl's argument on this point is irrelevant.

opined that "basic principles of due process likely require that any 'lawful direction' contain all, or many, of these qualities." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357-60 (1983)). Accordingly, the court reversed Huziar's conviction because the direction he was given ("it's time for you to leave") was not clear and not repeated, nor was Huziar given a reasonable opportunity to comply with it. *Id.* Although *Huziar* is an unpublished case, the Court finds the *Huizar* factors persuasive and evaluates the LRAD announcement with these due process guideposts in mind.

The LRAD announcement satisfies *Huziar*'s basic principles of due process. Unlike the direction "it's time for you to leave," the LRAD announcement clearly delineated where Pearl could and could not stand. *See* Ex. 7 ("Stay out of the area of the driveway to allow for vehicular traffic. Remain on the sidewalk or across the street."). Pearl argues that the announcement was ambiguous because the "area of the driveway" is undefined, but the LRAD announcement makes clear that the "area of the driveway" is the area "allow[ing] for vehicular traffic" from the street to the ICE Facility.

Pearl also argues that the announcement was ambiguous because it referred to trespassing, an offense for which he was never cited. This argument, however, misunderstands the purpose of *Huziar*'s due process principles. The Fifth Amendment's void-for-vagueness doctrine ensures that laws—and, in this case, directives—are stated "with sufficient definiteness that ordinary people can understand what *conduct* is prohibited." *Kolender*, 461 U.S. at 357 (emphasis added). The LRAD announcement described the conduct that is prohibited with sufficient definiteness. That the announcement also warned that Pearl's conduct could constitute trespassing does not render its description of the prohibited conduct vague.

PAGE 13 – OPINION AND ORDER

In addition to being sufficiently clear and explaining that violators of the warning would be subject to arrest, the LRAD announcement also was repeated several times with several minutes in between each play, according to the testimonies of Special Agent Coring and Inspector Cranmore. Thus, a rational trier of fact could find that Pearl had a reasonable opportunity to comply with the order.[8] Finally, Pearl argues that there is insufficient evidence to conclude that he acted willfully because he did not have "actual notice." The Court rejects this argument for the same reasons as explained above.

## B. Claimed Right to Trial by Jury

Pearl also appeals from the denial of his motion for jury trial. A defendant's entitlement to a trial by jury is a question of law that is reviewed de novo. *United States v. Charette*, 893 F.3d 1169, 1172 (9th Cir. 2018). The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. CONST. amend. VI. "Petty" offenses may be tried without a jury, however, because they did not qualify as criminal prosecutions at common law. *See Harvey v. Brewer*, 605 F.3d 1067, 1075 (9th Cir. 2010) (O'Connor, J.). "The test for determining whether a particular offense is 'petty' is an objective one, focusing on the severity of the penalty authorized." *United States v. Clavette*, 135 F.3d 1308, 1309 (9th Cir. 1998). Whereas any crime punishable by a prison sentence of more than six months is "serious" and entitles a defendant to the right to a jury trial, an offense punishable by a prison term of less than six months is presumed petty. *Id.* This presumption may be overcome, but "only if [the defendant] can demonstrate that any additional statutory penalties,

---

[8] Pearl argues that, because the surveillance footage depicts him only for 17 seconds, there is no evidence that he had a reasonable opportunity to comply with the LRAD announcement. For the reasons already explained, a rational trier of fact could credit the testimony of Special Agent Coring and Inspector Cranmore and find that Pearl had a reasonable opportunity to comply with the announcements without consideration of the surveillance video.

viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." *Blanton v. City of N. Las Vegas*, 489 U.S. 538, 542 (1989).

Pearl moved for a jury trial on two grounds: first, that the Constitution guarantees the right to a jury trial in all criminal prosecutions[9]; and second, that this case presents a "rare situation" where additional penalties, viewed in conjunction with the maximum potential sentence for his offenses, convert his offense into a "serious" one necessitating a jury. Judge Russo denied both arguments in a written opinion. ECF 37. On appeal, Pearl maintains the latter argument and newly argues that Judge Russo erred by failing to grant a jury trial as a matter of discretion, as Judge Amy M. Baggio of this District did in another ICE Facility protester case, *United States v. Griffin*.[10]

Pearl, however, fails to identify any additional *statutory* penalties, which, when considered in combination with the maximum period of incarceration, would convert his presumptively petty offense into a serious charge entitling him to a trial by jury. Pearl likens the "potential surveillance" that ICE protesters face based President Trump's suggestion that they could be classified as "domestic terrorists" to statutory penalties. He argues, for example, that the "threat of being placed on an FBI watchlist" is analogous to being statutorily required to register as a sex offender or the threat of deportation under immigration laws, which are two additional

---

[9] Judge Russo correctly rejected Pearl's argument that all criminal defendants are entitled to jury trials, as contrary to binding precedent. *See* ECF 37 at 4. This Court is similarly bound by vertical precedent and reaffirms the principle that petty offenses may be tried without a jury. *See United States v. Nachtigal*, 507 U.S. 1, 2, 5-6 (1993) (an individual convicted of an offense carrying a maximum penalty of six months' imprisonment and a $5,000 fine "is not constitutionally entitled to a jury trial").

[10] *United States v. Griffin*, Case No. 3:25-cr-474-AB-1 (D. Or., information filed Nov. 17, 2025).

PAGE 15 – OPINION AND ORDER

penalties that courts have found sufficient to overcome the presumption against a right to trial by jury in cases alleging only petty offenses. *See Fallen v. United States*, 290 A.3d 486, 499 (D.C. Ct. App. 2023) (mandatory 10-year sex offender registry); *Bado v. United States*, 186 A.3d 1243, 1262 (D.C. Ct. App. 2018) (deportation). The exception to this presumption exists, however, to "ensure the availability of a jury trial in the rare situation where a *legislature* packs an offense it deems serious with onerous penalties that nonetheless do not puncture the 6-month incarceration line." *Blanton*, 489 U.S. at 543 (emphasis added; internal quotation omitted). Here, there is no statute stating that Pearl could be surveilled as a penalty of being convicted of these regulatory offenses. Thus, unlike the sex offender registry in *Fallen* or the deportation penalty in *Bado*, the threat of future executive investigation is not properly considered in the Court's analysis of whether Pearl's crime is "serious." Because the additional penalties Pearl describes are not statutory, Pearl has not shown that he is constitutionally entitled to a trial by jury.

Judge Russo also did not abuse her discretion in declining to grant Pearl a trial by jury. A judge may allow a jury trial as a matter of discretion even if a criminal defendant is not constitutionally entitled to one. On appeal, however, a trial judge's exercise of discretion may only be disturbed if the court failed to apply the correct legal standard or based its decision on unreasonable findings of fact. *See United States v. Ramos*, 65 F.4th 427, 432-33 (9th Cir. 2023) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021)). Pearl argues that Judge Russo should have exercised her discretion to award him a jury trial because Judge Baggio did so in *United States v. Griffin*. In that case, the defendant was charged with three Class C misdemeanors related to similar protest activity at the ICE Facility. But the different outcomes in *Griffin* and Pearl's case show only that different judges may lawfully exercise their discretion differently. Indeed, in two other misdemeanor cases relating to protest activity, Judge Youlee

PAGE 16 – OPINION AND ORDER

You denied motions for jury trials on the same discretionary basis.[11] Because Judge Russo applied the correct legal standard, relied on reasonable fact finding, and her decision fell within the range of permissible conclusions, Judge Russo did not abuse her discretion by denying Pearl's request for a trial by jury.

## CONCLUSION

The Court AFFIRMS Defendant's convictions and sentence for violating 41 C.F.R. § 102-74.385 and 41 C.F.R. § 102-74.390(c), and also AFFIRMS the denial of Defendant's motion for trial by jury.

**IT IS SO ORDERED**.

DATED this 9th day of July, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

---

[11] *See United States v. Alexander*, No. 3:25-po-00391-YY, ECF 43 (D. Or. May 1, 2026); *United States v. Molina*, No. 3:25-cr-00337-YY, ECF 54 (D. Or. May 7, 2026).